UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ROBIN P. MITCHELL, | ) | No. CV 07-03042-VBK |
| Plaintiff, | ) ) | MEMORANDUM OPINION AND ORDER |
| v. | ) ) | (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

Robin P. Mitchell ("Plaintiff") filed a Complaint on May 14, 2007 seeking reversal of the Decision of the Commissioner of Social Security ("Commissioner") denying her application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. This action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed a Certified Administrative Record ("AR"). This Memorandum Opinion will constitute the Court's findings of facts and conclusions of law.

1  After reviewing the matter, the Court concludes that for the
2 reasons set to be forth, the decision of the Commissioner must be
3 reversed and the matter remanded for development of the record and
4 further proceedings.

## **DISCUSSION**

Plaintiff filed an application for disability benefits under Title II of the Social Security Act, alleging disability due to depression and obesity. (AR 59.) After administrative denials, and a hearing before an Administrative Law Judge ("ALJ"), an unfavorable decision ensued, and this litigation followed.

Plaintiff asserts that the ALJ failed to satisfy his legal obligation to develop the record with regard to Plaintiff's mental impairment, and for that reason, the matter should be reversed and remanded for further hearing.

The ALJ determined that the medical evidence indicates Plaintiff is obese and has early osteoarthritic changes to the right knee. (AR 21.) There is no discussion, and no finding, concerning any mental impairment. There is, however, evidence in the record pertinent to Plaintiff's mental state, which will be briefly reviewed.

First, there are over a hundred pages of Plaintiff's diary entries pertaining to the year 2005. (AR 106-210. These diary entries describe a rather extreme state of lethargy, physical pain, and discomfort, which Plaintiff attributes to fibromyalgia. But, as the ALJ observed, the medical evidence does not document symptoms associated with fibromyalgia, nor is there a medical diagnosis by any physician of this disease. (<u>See</u> AR at 21, with citations to medical records.) The diary entries also dwell on what appears to be a rapid

and extreme weight gain, which Plaintiff attributes to a soy herbal supplement.

There is also evidence in the record that Plaintiff voluntarily went to Los Angeles County health facilities complaining of physical impairments, but sometimes refused treatment, and exhibited hostile or abusive behavior. (See AR at 219-227, 248-249.)  The ALJ took careful note of these records, but interpreted this evidence as impeaching Plaintiff's claims of severe body pain and fatigue.  Thus, the ALJ stated,

> "Quite the opposite, the [Plaintiff] has full energy to be hostile at medical providers.  Progress notes in September 2004 report the [Plaintiff] became angry for no reason and began yelling, pointing with her index finger, raising her voice, scolding, and giving hostile stares (citation).  Another report in December 2004 showed the [Plaintiff] was verbally abusive...  These findings are inconsistent with an individual who is under severe fatigue.  In addition, the [Plaintiff] refused to perform any laboratory tests, blood tests, or blood pressure measurement."

(AR 23.)

The ALJ's interpretation of Plaintiff's behavior is that it was hostile without reason, a position which has been echoed by the Commissioner in the JS.  But an open question is whether this behavior might be better characterized as bizarre, and whether it might, indeed, be related to some mental issue which has not been fully explored.  Certainly, Plaintiff voluntarily went to these facilities

1  seeking medical treatment.  Query, then, why she would on several
2  occasions, without apparent provocation, become upset and hostile, to
3  the point of walking out and not taking medical tests.
4      There are, in fact, mental health records which give some
5  indication of a possible mental impairment that may have some
6  functional impact.  Plaintiff was seen at the Los Angeles County
7  Department of Mental Health. (<u>See</u> AR at 264-274.)  The initial
8  assessment noted impaired concentration. (AR 268.)  The recommendation
9  was that she be evaluated by a physician for medication support
10 services and also be seen in individual sessions for counseling. (AR
11 269.)  The "Medication Log" indicates she has "psychosomatic" issues.
12 (AR 273.)  A mental health professional, Dr. Godwin, diagnosed major
13 depressive disorder, under §296.33.  According to the DSM-IV-TR, the
14 current text, the diagnostic criteria for §296.33 indicate the
15 presence of two or more Major Depressive Episodes.  The DSM-IV also
16 sets forth the criteria for establishing a major depressive episode.
17 These include, among others, a depressed mood most of the day, nearly
18 every day, as indicated by either subjective report or observation
19 made by others; a markedly diminished interest or pleasure in all, or
20 almost all activities most of the day; a significant weight loss when
21 not dieting, or weight gain; insomnia or hypersomnia nearly every day;
22 and fatigue or loss of energy nearly every day.  A careful reading of
23 Plaintiff's diary would appear to describe the presence of each of
24 those symptoms on a recurring basis.  The Commissioner's depreciation
25 of the value of these diary entries is not well taken.  Nor is the
26 Commissioner's citation to Plaintiff's statements denying the
27 existence of a mental impairment. (<u>See</u>, <u>e.g.</u>, JS at 8, citing AR at
28 80, 245-246.)  It is not uncommon that an individual with a mental

impairment may deny its existence, or fail to seek treatment. For example, see Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996), in which the Circuit held that claimants such as Plaintiff are not required to seek psychiatric treatment in order to establish a mental illness. ("It is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.") Id., quoting Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989).)

Finally, the Court notes that at the hearing, at which Plaintiff was unrepresented, she brought up issues related to her stress on several occasions, but these were simply not explored during the testimony. In fact, the ALJ specifically indicated he would rather talk about her prior employment. (See e.g., AR at 301.) This pattern seemed to continue. For example, the following testimony occurred:

> "A   And then with this right here, like I said, this gives you a mental breakdown. You can't think all the time. Your memory.
> Q   What did you do as a nurses' aide?"

(AR 305.)

In sum, there is more than a suspicion that Plaintiff may have a mental impairment which causes functional limitations relevant to the disability analysis. The record, as it exists, is inadequate to permit a proper evaluation of this issue. In particular, in cases where there may be a mental impairment, the ALJ's duty is heightened to make sure that the record is developed. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). Here, the Court finds that a proper evaluation of Plaintiff's mental impairment cannot be

1  accomplished in the absence of a psychiatric consultative examination.
2       Based on the foregoing, the matter will be remanded for further
3  proceedings consistent with this Opinion.
4       **IT IS SO ORDERED.**

6  DATED: March 6, 2008                    /s/
                                        VICTOR B. KENTON
7                                       UNITED STATES MAGISTRATE JUDGE